IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL and NANCY HELLER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 03 C 6988 |
| ) | |
| CARL N. GRAF. JR., d/b/a Law Offices ) | |
| of Carl N. Graf, Jr. and Associates, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed the instant action on October 2, 2003, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* These allegations stem from an alleged collection letter and Notice of Intent to File a Mechanic's Lien sent to plaintiffs by defendant in his capacity as an attorney and on behalf of a client landscaper. Defendant filed his answer on November 24, 2003, and discovery ensued. On June 15, 2006, plaintiff filed a motion for summary judgment, arguing that there is no genuine issue of material fact as to three issues: (1) whether defendant was a debt collector, as required by the FDCPA, at the time he sent the letter to the plaintiffs, (2) whether the communication constituted a collection letter, or (3) whether plaintiffs' FDCPA claim should be judged under the unsophisticated consumer standard.

We grant plaintiffs' motion in part and deny it in part.

## BACKGROUND

We first note that defendant has failed to comport with Local Rule 56.1(b)(3), which requires the non-moving party in a summary judgment motion to file a response to the

movant's statement of facts which contains:

> (a) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (b) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (c) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

The rule further states that "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." The Seventh Circuit has consistently upheld strict compliance with the local rules. *See* Parra v. Trustees of the Univ. of Illinois, 2 Fed. Appx. 548, 553 (7th Cir. 2001); Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 870-71 (7th Cir. 2000); Waldridge v. American Hoechst Corp., 24 F.3d 918, 921-22 (7th Cir. 1993). Here, defendant only responded to paragraphs 1-6 and 8-14 of plaintiffs' statement of facts. Defendant failed to respond to paragraphs 7 and 15-39 of the statement. Based on this, we find the following facts to be undisputed.

On October 7, 2002, defendant Carl Graf, an attorney, sent a letter, using the stationary of his firm, "Carl N. Graf, Jr. & Associates," to plaintiffs Paul and Nancy Heller, on behalf of his client, Mark Muno, doing business as Woody's Tree Service. The letter stated that defendant's office was representing Mr. Muno, who had contracted for tree trimming and other services with the plaintiffs at their residence. The letter alleged that the amount contracted for ($800.00), remained unpaid and overdue. It further stated that enclosed was a Notice of Intent to File Mechanic's Lien Claim (pursuant to the Illinois Mechanic's Act, 770 ILCS 60/1 *et seq.* (1998))("notice"), which would be issued if the payment was not made within

ten days from the date of the letter. It stated that issuance of the lien and a suit to enforce the

lien would result in the judicial sale of plaintiffs' property. Included in the letter was the

notice, along with a legal description of plaintiffs' property. Plaintiffs allege that the letter did

not include any notice regarding validation or dispute procedures, as required under the

FDCPA (15 USC §1692(g)). This letter was one of 14 substantially identical letters sent

between the 4th and 28th of October, 2002, to individuals who contracted with Mr. Muno and

allegedly owed him money. Three of these letters culminated in lawsuits, including the one

against plaintiffs for breach of contract (*see* def. resp. to plfs' 1st set of discovery requests, ¶2).

On October 22, 2002, plaintiff Paul Heller, also an attorney, sent defendant a letter on

his firm's letterhead, disputing the debt. Plaintiffs' letter stated that plaintiffs did not do

business with Mr. Muno but with another man named John, with whom they entered into a

verbal contract for tree-trimming services. It stated that defendant's notice was improper and

untimely. The letter demanded that defendant immediately send a letter to plaintiffs and

plaintiffs' mortgage lender withdrawing the notice. It then alleged that defendant's letter was

a collection letter which did not contain the dispute and verification language required by the

FDCPA. The letter concluded with plaintiffs requesting that defendant take steps to correct

the problem.

On November 7, 2002, defendant responded to plaintiffs' letter, stating that he was

aware of the Illinois Mechanic's Lien Act and disputing some of the allegations made by

plaintiffs about the provisions of the Act. Defendant stated that his client did perform the

services for plaintiffs and that the notice was timely. It stated that if plaintiffs believed the

balance was not due, they could forward proof of payment to defendant. Finally, the letter

stated that steps to file the lien would be deferred for 14 days for either payment or proof of

payment to be received. Defendant's November 7, 2002, letter did not include any dispute or verification notices.

Despite plaintiffs' attempt to dispute the debt, defendant filed a lawsuit against plaintiffs in Lake County, Illinois, which plaintiffs state was without basis (plfs' stmt of facts, ¶36). After a trial on the merits, the court agreed and ruled in favor of plaintiffs.

Plaintiffs subsequently filed this lawsuit in federal court alleging that defendant's letters violated § 1692(g) of the FDCPA, in that defendant "never gave plaintiffs written notice of their right to dispute the alleged debt and obtain proof of its validity," and that even if defendant had given plaintiffs notice of their right to dispute the alleged debt, the statements in the letter would have rendered that notice ineffective because the letter required the debt to be paid within ten days or defendant would file a mechanic's lien.[1]

## ANALYSIS

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Though defendant's failure to comply with Local Rule 56.1(b) results in our accepting as true all the uncontested material facts in plaintiffs' statement, it does not

---

[1] Section 1692(g) provides in relevant part:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

* * *

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; [and]

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector ... .

result in an automatic grant of a motion for summary judgment. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006); Smith v. Lamz, 321 F.3d 680, 682-83 (7th Cir. 2003). We must still draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Defendant's Affidavit

As an initial matter, plaintiffs ask this court to strike defendant's affidavit, which defendant submitted in response to plaintiffs' motion for summary judgment. Plaintiffs allege that it is "self-serving" and directly contradicts defendant's deposition testimony, in which he admitted that he was a debt collector. We note that plaintiffs' characterization of the affidavit is a bit redundant. All affidavits are "self-serving" insofar as they serve the interests of the party submitting them. With regards to plaintiffs' allegations that it contradicts defendant's deposition, we do not agree.

Plaintiffs correctly state the law. It is well settled that a party "cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition." Piscione v. Ernst & Young, LLP, 171 F.3d 527, 532 (7th Cir. 1999). But we do not agree with plaintiffs that defendant admitted, in his deposition testimony, to being a debt collector. Plaintiffs allege that "[d]efendant testified...that he represents and assists numerous people in the collection of debts" (plfs' reply in sup. of mo. for sum. jdgmt at 3). Defendant's actual testimony was:

> Q Are you currently assisting any of your clients in collecting amounts of money from others?
> A Others, others meaning entities or persons?
> Q Others meaning people and entities that allegedly owe money to your clients for services rendered.
> A Yes, I represent a number of people in that situation.

We do not find this testimony an admission by defendant that he is a debt collector. For instance, a majority of breach of contract claims involve one party suing because they did not receive the benefit of services rendered. Much of that time the benefit not received is monetary. Defendant's representation of these clients would not render him a debt collector. Furthermore, the FDCPA only covers those attorneys who are acting as debt collectors to *consumers*. Defendant's testimony here was inclusive of both people and entities. Without a more specific reference to defendant's conduct we cannot infer that this testimony was an admission of debt collection, and therefore cannot infer a conflict with defendant's affidavit.

Further, plaintiff alleges that defendant testified that "he sent collection letters to people and enforced liens using paralegals and secretaries to do research, such as property tract searches and drafting" (plfs' reply at 3). With reference to the alleged admission that defendant sent collection letters to people, the deposition testimony is as follows:

> Q Did you write the letters contained in Exhibit 1? (The fourteen collection
>    letters before the court.)
> A Yes, they bear my signature.
> Q Did anyone at your office help you write the letters?
> A Anyone help me write them?
> Q Yes, or assist you in any way.
> A I had a typist to type it, as well as type the notice that accompanied it, and
>    it was notarized each of the notices by appears Joanna Buschauer [sic].

The testimony regarding the use of paralegals and secretaries is as follows:

> Q How does one find the legal description of an entity?
> A That's what the track [sic] search will provide.
> Q I see. So the track search will give you the PIN number and exact legal
>    description?
> A Correct.
> Q Who deals with the service that does the track search?
> A In my office?
> Q Yes.
> A Generally the paralegal or secretary.

Again, we do not find that this testimony is in conflict with defendant's affidavit – where he admits sending the 14 letters that are the subject of the first set of interrogatories (def. aff., ¶¶25-27). There is no conflict here. As to the second set, the fact that defendant's secretary or paralegal performs property tract searches alone does not indicate that the defendant is performing those searches solely for purposes of debt collection. Defendant has stated in his affidavit that one of his areas of practice is in real estate sales and purchases (def. aff., ¶9). Furthermore, there is nothing in this testimony to indicate that defendant employed a secretary or paralegal solely to perform duties related to debt collection. We do not see a conflict between defendant's deposition testimony and his affidavit. Therefore, we will consider the affidavit in determining this motion.

## Defendant as Debt Collector

Plaintiffs argue that there is no genuine issue as to the material fact that defendant is a debt collector, and therefore governed by the FDCPA. The FDCPA is a broad statute designed to "protect consumers from a host of unfair, harassing and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." Blackmore v. Pekay, 895 F.Supp. 972, 977 (N.D. Ill.1995)(quoting Oglesby v. Rotche, 1993 WL 460841 (N.D. Ill. 1993)). The FDCPA, however, only applies to debt collectors. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 USC § 1692a(6). This includes attorneys only when an attorney's principal business is debt collection, or those who regularly collect debts of another. Id. Plaintiffs allege that defendant regularly collects consumer debts. Thus, for the purposes of deciding this

summary judgment motion, we conclude that the FDCPA applies to defendant unless he has put that issue into play through affidavits or other evidence. *Id.* This, defendant has done. Defendant has submitted an affidavit stating his areas of practice, the amount of time he has spent on activities related to debt collection, and the amount of money received from such activities. Defendant has also submitted other evidence, including the financial records of his practice from the time period in question. Defendant also claims that his activities cannot be classified as debt collection because he is merely sending the notice required by the Illinois Mechanic's Act and is not attempting to collect a debt.[2]

We must then determine whether this proffered evidence creates a genuine issue. In order to do so we must decide what constitutes the "regular" collection of debts. Generally, courts have looked to the volume of the attorney's practice devoted to debt collection to determine whether the attorney is a debt collector. *See e.g.,* Scott v. Jones, 964 F.2d 314 (4th Cir. 1992)(attorney found debt collector where fees from debt collection constituted 70-80% of total fees); Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994)(attorney who stated that 98-100% of practice for two years and 80% of practice for three years was in area of collection was found to be a debt collector).

While not drawing a bright line rule, courts have generally found that where an attorney's practice is approximately 1% debt collection, that is not sufficient to satisfy the definition. *See* Hartl v. Presbrey & Associates, 1996 WL 529339 (N.D. Ill. 1996)(attorney not debt collector where debt collection practice comprised less than 1% of overall practice); Mertes v. Devitt, 734 F. Supp. 872 (W.D. Wis. 1990)(attorney not debt collector where he had averaged less than two collection matters per year for the last ten years constituting less than

---

[2]We dismiss this last argument for reasons set forth in the next section regarding the collection letter.

1% of overall practice); <u>Argentieri v. Fisher Landscapes, Inc.</u>, 27 F. Supp. 2d 84 (D. Mass. 1998)(two-person firm was not debt collector where it spent 0.4% of its time in debt collection activities); <u>Nance v. Petty</u>, 881 F. Supp 223 (W.D. Va. 1994)(attorney and firm not debt collectors where debt collection practice constituted only .61-1.07% of its cases); <u>Franco v. Maraldo</u>, 2000 WL 288378 (E.D. La. 2000)(attorney not debt collector where able to show less than 1% of practice involved debt collection and only attempted to collect debts in two instances in the past two years).

However, courts have also found that if the volume of an attorney's debt collection services is great enough, he will be deemed a debt collector even though the services amount to a small fraction of his actual business activity. *See* <u>Garret v. Derbes</u>, 110 F.3d 317 (5th Cir. 1997) ("If the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them regularly"); *see also* <u>Silva v. Mid-Atlantic Mgmt. Corp.</u>, 277 F. Supp. 2d 460 (E.D. Pa. 2003)(defendant found to be a debt collector, despite having accepted only ten cases per year, because he did so consistently over several years); <u>Stojanovski v. Strobl & Manoogian P.C.</u>, 783 F. Supp. 319 (E.D. Mich. 1992)(firm found debt collector even though debt collection comprised only 4% of overall caseload where firm had ongoing relationship with Chrysler Credit Corporation, a large creditor); *but see* <u>Mladenovich v. Cannonito</u>, 1998 WL 42281 (N.D. Ill. 1998)(court recognized principle that regularity can trump volume, but held attorney not debt collector where only 23 collection letters were sent and 74 collection letters for the enforcement of a mechanic's lien, comprising 1.4% of total cases, and did not earn any fees nor attempt to collect fees in the 18 months prior to sending letter to plaintiff).

Most courts have gone beyond merely looking at the volume of the attorney's debt

collection practice; they include other factors, such as the frequent use of a particular debt collection letter, whether there exists a steady relationship between the attorney and the creditor, and whether the attorney has personnel specifically assigned to work on debt collection activity. Goldstein v. Hutton, 374 F 3d 56, 62-63 (2$^d$ Cir. 2004) (defendant found to be debt collector where it issued 145 notices in one year for a single entity and had a system in place for preparing the notices); Schreyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999), (defendant not debt collector because only 2% of practice related to collection, did not employ full-time debt collection personnel and regularly represented defendant in debt collection actions); see also Von Schmidt v. Kratter, 9 F. Supp. 2d 100 (D. Conn. 1997)(defendant not debt collector where only 6% of firm's new cases were debt collection, comprising a total of $807.79 of the firm's gross receipts, and where the relationship between the law firm and the creditor lasted only three years and was thus not a long-term course of dealing).

In light of this discussion, and turning to the case before us, we find that plaintiffs have not met their burden of proving that defendant is a debt collector as a matter of law. Plaintiffs have offered proof that defendant issued 14 collection letters in the span of one month. These collection letters were substantially identical in form and were on behalf of one client. Defendant entered into litigation of some sort in three of these cases, including plaintiffs'.

Defendant has stated that in the relevant time period, from October 2001 until the present, those 14 letters are the only ones he has issued (def. aff., ¶30). His debt collection activity comprises less than 1% of his overall practice and he generates less than 1% of his overall fees from this activity (id., ¶20). Defendant stated that the majority of his litigation is spent defending clients in lawsuits brought by third party vendors, landlords and creditors (id., ¶9). Defendant states that he has spent no time on debt collection activities other than on

litigation, for which he spends less than one hour a week (def. 56.1 stmt of facts, ¶4). Defendant states that he does not employ a person full-time for the purpose of debt collection activity, nor does he have a system in place for such activity (def. aff., ¶11). Based on this, we find there is a genuine issue of material fact as to defendant's status as a debt collector, and therefore plaintiff's motion for summary judgment as to this issue is denied.

Letter to Plaintiffs as Debt Collection Communication

Next, plaintiff argues that the letter and notice constitute a debt collection letter under the act as a matter of law. The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 USC § 1692a(2).

Defendant argues that his issuance of the notice was a prerequisite to the perfection of a mechanic's lien under Illinois law, and therefore it would be contrary to Illinois law that the issuance of said notice would be for the sole purpose of collecting a debt.

As an initial matter, we note that defendant is incorrect that his mailing of the notice was a prerequisite to the perfection of a mechanic's lien, for two reasons. First, as plaintiffs correctly point out, defendant's client was, admittedly, a contractor, not a subcontractor.[3] The notice provision of the Illinois Mechanic's Act requires subcontractors to give notice to the owner of the property before filing a lien. 770 ILCS 60/24 (West. 1994). This is not a requirement of contractors; it is probably because an owner has notice of whether or not the contractor was paid, but is less likely to have notice regarding payment of subcontractors that the owner may or may not have had any direct contact with. *See* 770 ILCS 60/1 and 60/7.

---

[3]Defendant's November 7, 2002, letter stated that "our client rendered services to you as a contractor" (plf 56.1 mo., exh. H).

Therefore, because Mr. Muno was a contractor, no notice was required under the Act.

Secondly, even if Mr. Muno was considered a subcontractor, the notice required to perfect a lien under the Act is required within 90 days of the date of completion of the work. 770 ILCS 60/24 (West. 1994). In defendant's November 7, 2002, letter to plaintiff, he admitted that the work had been performed two years prior. Additionally, he claimed that he was "acutely aware" of the Illinois Mechanic's Act. Therefore, he must have been aware that the time for notice had expired under the Act.

Regardless, we do not agree with defendant's contention that the issuance of notice under the Act, and the attempt to collect a debt are mutually exclusive. The Seventh Circuit has held that the FDCPA's definition of "communication" is a broad one, which encompasses even the service of a summons and complaint. Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 917 (7th Cir. 2004). The court there held that the statute was intended to protect consumers from unfair, harassing and deceptive collection practices. The court's interpretation furthered this objective "because it helps ensure that debtors will be informed about their validation rights and that debt collectors, knowing they are obliged to advise debtors of these rights, will investigate claims before initiating litigation to collect debts." Id. at 917-18. Limiting the definition of communication to exclude the service of pleadings would create a loophole in the validation notice requirement and be inconsistent with the drafters' intent. Id. at 918. We believe that the same should be said for sending a notice to file a lien. The letter in question and the accompanying notice, in this case, certainly "convey[ed] information" about the plaintiffs' alleged debt, and thus were "communications," as defined by the FDCPA.

The only support we have been able to find for defendant's proposition is Kong-Quee v. Lien Filer's Etc. LLC, 2005 U.S. Dist. LEXIS 13893 (N.D. Ga. 2005). There the court held

that the filing of a lien and the corresponding notice to the property are merely mandatory steps that must be taken before the lien can be enforced and therefore do not constitute an "initial communication" that would be governed by the FDCPA. The court based its finding on an Eleventh Circuit case, Vegas v. McKay, 351 F.3d 1334 (11th Cir. 2003), which held that a summons and complaint did not constitute a communication as envisioned by the FDCPA. It is worth noting that the reasoning of Vegas was explicitly rejected in the Seventh Circuit's opinion in Thomas. 392 F.3d at 917. Furthermore, the Eleventh Circuit in In re Martinez, found the FDCPA applicable to the service of a mortgage foreclosure package including a summons, complaint and related items called for by Florida mortgage foreclosure law. 311 F.3d 1272 (11th Cir. 2002)(adopting the district court opinion reported at 271 B.R. 696 (S.D. Fla. 2001)). Our conclusion finds additional support in Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227 (3rd Cir. 2005), which held that the fact that a state law provided a lien to secure the plaintiff's debt "does not change its character as a debt or turn [defendant's] communications to the [plaintiffs] into something other than an effort to collect that debt."

We find that plaintiffs have met their burden as to the characterization of the letter and notice as a communication under the FDCPA, and that defendant fails to show there is a genuine dispute. Therefore we grant summary judgment on this issue.

The "Unsophisticated Consumer" Standard

Finally, plaintiffs argue that summary judgment should be granted as to the standard under which plaintiffs' claim should be analyzed. The standard under which plaintiffs' claim should be adjudged is naturally a matter of law and not of fact, and therefore we will decide it as such.

Defendant claims we should not use the unsophisticated consumer standard because Mr.

Heller is an attorney who specializes in collections, commercial litigation and creditor rights, and responded to defendant's initial letter on his firm's letterhead (def. ans., ¶6; def. aff., ¶37-38).

The law in this circuit is clear that to determine if the collection letters at issue violate the FDCPA, we must examine them from the perspective of the unsophisticated consumer or debtor. <u>Durkin v. Equifax Check Servs.</u>, 406 F.3d 410, 414 (7th Cir. 2005). This term describes the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading. <u>Woolley v. Krisor & Assocs.</u>, 2000 U.S. Dist. LEXIS 7069, at *6-7 (D. Ind. 2000)(citing <u>Gammon v. GC Services</u>, 27 F.3d 1254, 1257 (7th Cir. 1994)). The unsophisticated debtor is regarded as "uninformed, naive, or trusting," but nonetheless is considered to have a "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." <u>Sims v. GC Servs. L.P.</u>, 445 F.3d 959, 963 (7th Cir. 2006). The standard is an objective one – whether the plaintiff was misled is not an element of a cause of action. <u>Woolley</u>, 2000 U.S. Dist. LEXIS 7069 at *6. The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled. <u>Id.</u> (citing <u>Beattie v. D.M. Collections, Inc.</u>, 754 F. Supp. 383, 392 (D.Del. 1991)). We are not concerned whether Mr. Heller, as an attorney who practices in this field, was confused or deceived by the defendant's letters, we are solely concerned whether an unsophisticated consumer, who possesses only general knowledge about the financial world, would be confused or deceived.

Defendant claims that by responding on his firm's letterhead, Mr. Heller was acting as an attorney for his wife (def. stmt of facts, ¶21). Plaintiffs ask us to disregard this statement, as defendant provides no support in fact or in law for the proposition. Even if we were to

accept this statement, which we do not, it is irrelevant. Defendant's first letter was sent to plaintiffs prior to any knowledge that Mr. Heller was an attorney, and it did not include the verification and dispute language that plaintiffs claim was required by the FDCPA. Defendant cannot attempt to claim his communications were merely of the type between attorneys, and thus did not need to comport with the FDCPA. *See* Captain v. ARS Nat. Srvcs. Inc., 2006 WL 1886177 (S.D. In. July 7, 2006).

Therefore, we find that plaintiffs' claim should be adjudged under the unsophisticated consumer standard.

## CONCLUSION

For the foregoing reasons, we grant plaintiffs' motion for summary judgment as to the issues of the characterization of the letter and notice, and as to the standard under which plaintiffs' claim is to be adjudged, and deny it as to defendant's status as a debt collector.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____ Feb, 13, 2007.